UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH F. CAINCROSS, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| *vs.* | ) No. 1:15-cv-01637-JMS-MPB |
| | ) |
| CAROLYN W. COLVIN, *Acting Commissioner of the Social Security Administration*, | ) |
| | ) |
| *Defendant*. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Kenneth Caincross applied for disability insurance benefits and supplemental security income in March 2013, alleging a disability onset date of March 15, 2013. [Filing No. 15-5 at 2-8.] His application was denied initially and on reconsideration, and subsequently he requested a hearing with an Administrative Law Judge ("ALJ"). [Filing No. 15-4 at 2-9; Filing No. 15-4 at 15-23; Filing No. 15-4 at 29-30.] The ALJ held a hearing on March 4, 2015, and issued a decision on April 1, 2015, concluding that Mr. Caincross was not entitled to receive benefits. [Filing No. 15-2 at 16-42; Filing No. 15-2 at 50-92.] The Appeals Council denied review on August 25, 2015. [Filing No. 15-2 at 4-7.] Mr. Caincross then filed this action asking the Court to review the denial of benefits. [Filing No. 1.]

## I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an

impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last…not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e)(g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Mr. Caincross was fifty-three years old when he applied for disability insurance benefits and supplemental security income in March 2013. [Filing No. 15-5 at 2-10.] Mr. Caincross worked as a licensed practical nurse at several nursing homes, then enlisted in the Indiana National Guard and was eventually deployed to Kuwait (2003-04), the Gulf Coast region to assist with the aftermath of Hurricane Katrina (2005), Baghdad, Iraq (2006-07), and Afghanistan (2009-10). [Filing No. 16-3 at 12-14.] Mr. Caincross claims he is disabled based on a variety of conditions, which will be discussed as necessary below. Mr. Caincross meets the insured status requirements of the Social Security Act through December 31, 2018. [Filing No. 15-2 at 18.]

Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on April 1, 2015, determining that Mr. Caincross was not entitled to receive disability insurance benefits or supplemental security income. [Filing No. 15-2 at 16-42.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Caincross had not engaged in substantial gainful activity[1] since March 15, 2013, the alleged onset date. [Filing No. 15-2 at 18.]

- At Step Two of the analysis, the ALJ found that Mr. Caincross suffered from the severe impairments of low back pain associated with degenerative disc disease, left shoulder pain with a limited range of motion, osteoarthritis of the knees, headaches, gout, a history of carpal tunnel syndrome, obstructive sleep apnea, obesity, right ankle impairment, post-traumatic stress disorder, and a dysthymic disorder. [Filing No. 15-2 at 19.]

- At Step Three of the analysis, the ALJ found that Mr. Caincross did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 15-2 at 19-31.]

- After Step Three but before Step Four, the ALJ found that Mr. Caincross has the residual functional capacity ("RFC") to perform work within the medium range, and: "can lift, carry, push, and pull 50 pounds occasionally and 20 pounds frequently. He can sit for 2 hours at a time and for a total of 6 hours of

---

[1] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

an 8-hour work day, can stand for 2 hours at a time and for a total of 6 hours of an 8-hour work day, and can walk for 2 hours at a time and for a total of 6 hours of an 8-hour work day.  He should never kneel, crawl, operate foot controls, climb ladders or stairs, or work at heights or around machinery.  He should limit to an occasional basis his bilateral reaching overhead.  He should also limit to an occasional basis his bending and stooping.  He is limited to simple, routine tasks where 'routine' means that whatever tasks are performed on Monday continue the same through Friday with little or no changes.  He should limit to an occasional basis his contact with the general public, co-workers, and superiors." [Filing No. 15-2 at 31-40.]

- At Step Four of the analysis, the ALJ found that Mr. Caincross was not capable of performing any of his past relevant work.  [Filing No. 15-2 at 40.]

- At Step Five of the analysis, the ALJ found that Mr. Caincross was capable of performing jobs in the national economy, including assembler, cleaner, and hand packager.  [Filing No. 15-2 at 41.]

Mr. Caincross sought review of the ALJ's decision from the Appeals Council, but that request was denied on August 25, 2015, [Filing No. 15-2 at 4-7], making the ALJ's decision the Commissioner's final decision subject to judicial review. Mr. Caincross then filed this action, asking that the Commissioner's decision be reversed and requesting an award of benefits, or in the alternative, that the case be remanded for further proceedings.  [Filing No. 1.]

## III.
### DISCUSSION

Mr. Caincross raises four grounds that he contends require remand: (1) that limiting him to simple, routine tasks does not fully account for his moderate difficulties with concentration, persistence, or pace, [Filing No. 25 at 25-30]; (2) that the ALJ's finding that he can lift and carry 20 pounds frequently and 50 pounds occasionally is based on reasoning that is internally inconsistent and factually incorrect, [Filing No. 25 at 30-35]; (3) that the ALJ found "generally credible" Mrs. Caincross' observations about Mr. Caincross' limitations, but did not include in his RFC or the hypothetical questions to the Vocational Expert ("VE") the limitations Mrs. Caincross observed, [Filing No. 25 at 35-36]; and (4) that the ALJ erred in his analysis of the Department of Veterans Affairs' ("VA") determination that Mr. Caincross is totally and permanently disabled, [Filing No. 25 at 36-37].

On April 28, 2016, the Commissioner filed a Motion for Remand for Further Proceedings Pursuant to Sentence Four of 42 U.S.C. § 405(g). [Filing No. 31.] In the motion, the Commissioner states that remand is appropriate to "re-evaluate the medical source opinions of record; re-evaluate the statements of the claimant's wife; and, if warranted, obtain additional vocational evidence." [Filing No. 32 at 1.] Mr. Caincross opposes the motion in part, arguing that remand is necessary on all four issues and that his "concern is that if the Court reverses and remands based only on the one reason mentioned by the Commissioner, the ALJ on remand will assume that he made no other mistakes." [Filing No. 33 at 1.]

The parties agree that remand is necessary on the second ground raised by Mr. Caincross – that the ALJ's finding that he can lift and carry 20 pounds frequently and 50 pounds occasionally is based on reasoning that is internally inconsistent and factually incorrect. The Court grants the Commissioner's Motion to Remand to the extent that it finds remand is appropriate based on that

issue, but the Court will address the other issues raised by Mr. Caincross to determine whether they should be considered on remand as well.

### A. Limitation to Simple, Routine Tasks

Mr. Caincross argues that the ALJ found that he had moderate difficulties with concentration, persistence, or pace, yet did not include those deficiencies in his determination of his RFC or his hypothetical questions to the VE. [Filing No. 25 at 25-26.] Instead, Mr. Caincross asserts, the ALJ limited him to simple, routine tasks, which "does not fully account for moderate difficulties in concentration, persistence, or pace." [Filing No. 25 at 26-27.] Mr. Caincross argues that the ALJ should have expressly referred to limitations in concentration, persistence, or pace in his questions to the VE "to focus the vocational expert's attention on those limitations and assure reviewing courts that the expert's testimony constitutes substantial evidence of the jobs a claimant can do." [Filing No. 25 at 27-28.] Mr. Caincross contends that the circumstances here do not fall within one of the exceptions to that rule. [Filing No. 25 at 28-29.] He asserts that remand on this issue is necessary because it "is a fundamental error." [Filing No. 33 at 2.]

The Commissioner argues in response that the ALJ "did not assume that limiting Plaintiff to simple, repetitive tasks would accommodate his limitations in concentration, persistence, or pace," but rather "gave great weight to consulting psychologist Dr. Robison's opinion that Plaintiff had moderate limitations in concentration, persistence, or pace and adopted medical expert Dr. Olive's RFC opinion, which he found to be consistent with Dr. Robison's opinion and VA records indicating a baseline level of moderate symptoms." [Filing No. 34 at 2.] The Commissioner contends that, because the ALJ relied on a medical expert and consulting psychologist to find that Mr. Caincross could perform simple, repetitive tasks, he did not err in determining the RFC. [Filing No. 34 at 3.] The Commissioner also notes that the VE testified that she had seen the exhibits and

heard the testimony in the case, and that the ALJ specifically asked the VE to consider Mr. Caincross' background and "the limitations alluded to by Dr. Olive." [Filing No. 34 at 5.]

On reply, Mr. Caincross argues that it is irrelevant whether the ALJ included moderate limitations in concentration, persistence, or pace in the RFC, because either way the ALJ needed to include that set of limitations in his hypothetical questions to the VE and did not do so. [Filing No. 37 at 2.] Mr. Caincross also argues that neither exception to the rule that a limitation to simple, repetitive tasks does not account for moderate limitations in concentration, persistence, or pace applies because: (a) the VE only testified that she had seen exhibits in the case, and those would not have been included the medical records; and (b) even if she had seen the medical records, she could not have known that the ALJ would have found that Mr. Caincross had moderate difficulties in concentration, persistence, or pace because the ALJ made that finding after the hearing. [Filing No. 37 at 5.] Mr. Caincross asserts that what the ALJ assumed regarding the effectiveness of limiting him to simple, repetitive tasks is irrelevant, and that the real issue is whether the ALJ included all of Mr. Caincross' limitations in the RFC assessment and in the hypothetical questions to the VE. [Filing No. 37 at 6-7.]

Between steps three and four of the disability claim analysis, the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(e). The Seventh Circuit has held that an ALJ "must incorporate all of the claimant's limitations supported by the medical record" when posing a hypothetical to a VE and when making an RFC assessment. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *see also Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014) ("We have stated repeatedly that ALJs must provide VEs with a complete picture of a claimant's residual functional capacity…. [I]f the hypothetical posed to the VE does not include all of the claimant's limitations, there must be some amount of evidence in the record indicating that the VE knew the extent of the claimant's

limitations…. We require the VE to know about a claimant's limitations so that the VE does not refer to work that the claimant is not capable of undertaking"). If an ALJ fails to include all of this information, then the VE's hypotheticals and the assessment are insufficient unless: (1) the VE independently viewed the claimant's medical records or heard testimony regarding the limitations in question; or (2) the ALJ phrased the hypothetical in such a way that "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619-20 (7th Cir. 2010). If the ALJ did not incorporate all limitations supported by medical records in the hypothetical posed to the VE and did not use those limitations in determining the claimant's RFC, then remand is required. *Id.* at 621.

The ALJ found that, based on Mr. Caincross' history, he had moderate difficulties with concentration, persistence, or pace. [Filing No. 15-2 at 30.] While the ALJ noted generally that he had already discussed "the nature, intensity, frequency, persistence, and limiting effects of all mental and physical symptoms," [Filing No. 15-2 at 32], he did not specifically address Mr. Caincross' moderate difficulties with concentration, persistence, or pace in connection with his RFC determination discussion – other than noting that Mrs. Caincross reported that Mr. Caincross had difficulty concentrating and completing tasks, but that he did not find her credible "to the extent that [she] maintains that [his] limitations prevent him from working," [*see* Filing No. 15-2 at 31-40]. The ALJ's failure to consider Mr. Caincross' moderate difficulties with concentration, persistence, or pace in connection with determining the RFC was error.

Additionally, when the ALJ questioned the VE to determine Mr. Caincross' capacity to perform his past relevant work or any jobs in the national economy, the ALJ did not include any conditions about Mr. Caincross' moderate mental limitations in the hypothetical questions. [Filing

No. 15-2 at 88-91.] While the ALJ instructed the VE to "[t]ake into consideration….the limitations alluded to by Drs. Fisher and Olive," [Filing No. 15-2 at 88], he did not specifically mention moderate limitations with concentration, persistence, or pace.  This contradicts Seventh Circuit precedent. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record").  Neither of the exceptions to the general rule that a limitation to simple, repetitive tasks does not account for moderate limitations in concentration, persistence, or pace applies.  The first exception – when the VE independently viewed the claimant's medical records or heard testimony regarding the limitations in question – does not apply here. The VE stated that she had "seen the exhibits" and "heard the testimony" during the hearing, but there is no indication that the exhibits included medical records and the prior testimony did not address moderate limitations in concentration, persistence, or pace.  The second exception – when the ALJ phrases hypothetical questions so that they exclude tasks prohibited by the claimant's limitations – also does not apply (and the Commissioner does not contend that it does).  "[T]he most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *O'Connor-Spinner*, 627 F.3d at 619.  The ALJ should have included Mr. Caincross' moderate limitations in concentration, persistence, or pace in his questions to the VE, and should have discussed them in connection with his RFC determination. His failure to do so warrants remand on this ground.

### B.  Limitations Mrs. Caincross Observed

Mr. Caincross also argues that remand is necessary because the ALJ found "generally credible" Mrs. Caincross' observations about Mr. Caincross' limitations, but did not include them in his RFC assessment or his hypotheticals to the VE. [Filing No. 25 at 35-36.]  Mr. Caincross refers

specifically to his wife's testimony that he "does normal activities but does them at a slower pace," "has trouble standing for long periods of time," "needs someone to accompany him when he goes places," and "can pay attention only for 'short periods of time.'" [Filing No. 25 at 36.]  He argues that the ALJ found Mrs. Caincross' testimony to be "generally credible," and "generally consistent with the objective evidence of the claimant's mental and physical impairments," yet did not include them in the RFC assessment or in his hypothetical questions to the VE.  [Filing No. 25 at 36.] While the Commissioner states that remand is appropriate to "re-evaluate the statements of the claimant's wife," [Filing No. 32 at 1], Mr. Caincross argues that remand is not necessary on that ground because the ALJ has already found that Mrs. Caincross' statements were credible, [Filing No. 33 at 3].  Rather, Mr. Caincross argues, the ALJ must include those limitations in the RFC and the hypothetical questions to the VE.  [Filing No. 33 at 3.]

The Commissioner contends that it is not clear whether the ALJ found Mrs. Caincross' statements credible or not because the ALJ also noted that he did not find Mrs. Caincross credible to the extent that she maintains Mr. Caincross' limitations prevent him from working.  [Filing No. 34 at 6.]  The Commissioner argues that remand is necessary so the ALJ can clarify his findings regarding Mrs. Caincross' statements.  [Filing No. 34 at 6.]

Mr. Caincross replies that the ALJ's statement that he did not find Mrs. Caincross credible to the extent that she maintains his limitations prevent him from working does not contradict the ALJ's earlier finding that she was a "generally credible witness," and that her reports were "generally consistent with the objective evidence of the claimant's mental and physical impairments." [Filing No. 37 at 10.]

It does not appear that the Commissioner disputes the ALJ's obligation to include the limitations Mrs. Caincross discussed in her testimony in his RFC discussion or his hypotheticals to

the VE. Rather, the Commissioner appears to dispute whether the ALJ found Mrs. Caincross' statements credible in the first place. The Court agrees with Mr. Caincross that the ALJ's statements regarding Mrs. Caincross' credibility are not contradictory. The ALJ clearly states that "[c]onsidering all of Ms. Caincross's statements regarding the claimant's symptoms, activities, and limitations," he found her to be "a generally credible witness." [Filing No. 15-2 at 34.] The ALJ further noted that her "reports are generally consistent with the objective evidence of the claimant's mental and physical impairments." [Filing No. 15-2 at 34.] The ALJ's subsequent statement that "[t]o the extent that Ms. Caincross maintains that the claimant's limitations prevent him from working, I do not find her credible" does not contradict his earlier statements. The Court reads the ALJ's last statement to mean that, although he finds Mrs. Caincross' statements credible to the extent that he agrees Mr. Caincross has the limitations she has testified to, the ALJ does not agree that those limitations prevent Mr. Caincross from working.

Because the ALJ has already assessed Mrs. Caincross' credibility, the Court does not find that remand is necessary to "re-evaluate" her statements. Remand is necessary, however, so that the ALJ can include the limitations Mrs. Caincross testified to – which the ALJ recognized as credible – in his RFC assessment and in his hypothetical questions to the VE. The Court denies the Commissioner's Motion to Remand on this issue, but remands so that the ALJ can include the limitations already recognized by the ALJ.

### C. VA's Determination that Mr. Caincross is Totally and Permanently Disabled

Finally, Mr. Caincross seeks remand so that the ALJ can "re-evaluate the VA's finding that [he] is totally and permanently disabled." [Filing No. 25 at 37.] Mr. Caincross argues that the standard for determining eligibility for disability insurance benefits and supplemental security income is "very similar" to the standard used by the VA to determine whether a veteran is totally disabled. [Filing No. 25 at 36.] In fact, Mr. Caincross contends, the VA standard for determining

whether a total disability is considered permanent is more stringent than the social security standard.  [Filing No. 25 at 36-37.]  Mr. Caincross argues that the ALJ should have considered the VA's determination that he was "totally and permanently disabled" due to service-related disabilities.  [Filing No. 25 at 36-37.]

The Commissioner argues that the ALJ sufficiently discussed the VA's findings, and stated that he gave the VA opinions "some weight but not great weight, as there is no evidence that the determination criteria at the military and VA match Social Security guidelines."  [Filing No. 34 at 7 (quoting Filing No. 15-2 at 35).]  The Commissioner argues that the Social Security Administration is not bound by a finding of another agency, but need only consider such a finding – and that the ALJ did so here.  [Filing No. 34 at 7-8.]  She also argues that even if the ALJ rejected the VA's unemployability finding for the sole reason that the two agencies use different standards, that finding is inconsequential because the ALJ still considered the underlying impairments and the reports and opinions of the VA treating sources.  [Filing No. 34 at 8.]

Mr. Caincross replies by reiterating that the Social Security Administration's definition of "disability" and the VA's guidelines for "permanent and total disability" are very similar, and arguing that the ALJ should have given the VA's findings more weight.  [Filing No. 37 at 11.]  Mr. Caincross also argues that the ALJ did not build a logical bridge from the evidence to his conclusion.  [Filing No. 37 at 11.]

While the Social Security Administration is not bound by the findings of another agency, the Seventh Circuit has instructed that an ALJ should give disability determinations made by the VA "some weight."  *Alford v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006) (citing *Davel v. Sullivan*, 902 F.2d 559, 560-61 n.1 (7th Cir. 1990)).  Additionally, in rejecting an ALJ's decision to

give "some" but not "great" weight to a VA determination because the two agencies employ different standards, the Seventh Circuit noted that the differences between the two standards are "small." *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (noting that "although the VA rated Hall 'only' 70 percent disabled, it pronounced him totally unemployable by reason of his disability…, which equates to a finding of total disability under the regulations of the Social Security Administration. For if your medical condition precludes substantial gainful employment, you're totally disabled – that's the Social Security Administrations' definition of disability"). In short, an ALJ must consider a VA determination. *See Quintana v. Colvin*, 2016 WL 775932, *3 (S.D. Ind. 2016) ("The Court acknowledges that a disability rating of 30% falls short of a determination that Quintana is disabled and unable to work. Nonetheless, under S.S.R. 06-03p and controlling case law, the ALJ was required to consider that disability determination…."); S.S.R. 06-03p ("evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered").

    Here, the ALJ acknowledged the VA's finding that Mr. Caincross was 100% disabled, but stated "I give these opinions some weight but not great weight, as there is no evidence that the determination criteria at the military and VA match Social Security guidelines." [Filing No. 15-2 at 35.] While the ALJ went on to discuss medical records reflecting treatment from various VA professionals, including a nurse practitioner, a physical medicine and rehabilitation specialist, two medical doctors, and a psychologist, [Filing No. 15-2 at 35-39], he did not discuss the VA's 100% disability determination further. While the Court acknowledges that the ALJ considered many of the medical opinions offered by VA sources, it is concerned that the ALJ did not fully discuss the VA's 100% disability rating simply because the VA and the Social Security Administration have different "determination criteria." [Filing No. 15-2 at 35.] This is improper, and the Court finds

that remand on this ground is also proper – particularly where the case is being remanded on other issues – so that the ALJ can fully consider the VA's ultimate finding that Mr. Caincross was 100% disabled.

## IV.
### CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** the Commissioner's Motion to Remand, [Filing No. 31], to the extent that it **VACATES** the ALJ's decision denying Mr. Caincross benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four) so that the ALJ can properly consider Mr. Caincross' lifting and carrying abilities in light of the medical evidence.  The Court **DENIES IN PART** the Commissioner's Motion to Remand, [Filing No. 31], to the extent that it finds remand is not necessary for the ALJ to "re-evaluate the statements of the claimant's wife."  The Court also **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four) so that the ALJ can:

- Fully incorporate Mr. Caincross' moderate limitations in concentration, persistence, or pace into his RFC assessment and into the hypothetical questions to the VE;

- Include Mrs. Caincross' observations regarding her husband's limitations – which the ALJ found credible – into his RFC assessment and into his hypothetical questions to the VE; and

- Fully analyze the VA's finding that Mr. Caincross is totally and permanently disabled.

Judgment shall issue accordingly.

Date: July 15, 2016

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**